# IN THE COURT OF APPEALS OF IOWA

No. 17-0818
Filed July 19,2017

**IN THE INTEREST OF L.F.,**
**Minor Child,**

**S.F., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

A mother appeals the adjudication of her child as a child in need of assistance following a dispositional hearing. **AFFIRMED.**

Ellen R. Ramsey-Kacena, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Julie Gunderson Trachta of Linn County Advocate, Cedar Rapids, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

A mother appeals the adjudication of her child as a child in need of assistance.[1]

## I.    Background Facts and Proceedings

L.F., born June 2015, came to the attention of the Iowa Department of Human Services (DHS) in August 2016, upon allegations of child abuse and denial of critical care by the mother.  Specifically, the DHS, alerted by medical providers, was concerned the mother was fabricating medical symptoms and insisting L.F. undergo extensive and unnecessary medical evaluations and treatment.  The mother began bringing L.F. to the emergency room shortly after L.F. was born, reporting the baby would vomit after eating.  Between June 27 and August 4, 2016, the mother brought L.F. to the hospital at least nineteen times, asserting L.F. was allergic to several varieties of food, which she believed caused both vomiting and diarrhea.  However, despite the mother's reports, multiple physicians informed the DHS that L.F. had not shown any remarkable symptoms during her hospitalizations.  The physicians had doubts about the veracity of the information they received from the mother and concerns the mother was feeding L.F. an inappropriate diet, potentially causing some of the symptoms.  Several rounds of food-allergy testing ultimately revealed that L.F. did not have any food allergies.

Following an unrelated procedure, the physicians told the mother that L.F. needed to be on a normal, regular food diet.  Despite that recommendation, the mother refused to give L.F. regular food and insisted on a diet consisting only of

---

[1] The child's father supported the adjudication and does not appeal.

donated breast milk. Nurses also reported concerns about the mother's behavior towards L.F., including forcibly changing L.F.'s diaper, shaking L.F.'s crib while telling her to "shut up," and physically striking L.F. on one occasion. The child abuse specialist at the University of Iowa Hospitals and Clinics was concerned the mother's behavior was rooted in a mental-health disorder, such as pediatric condition falsification (also known as Munchausen by proxy). Ultimately, a child abuse assessment performed by the DHS found the allegation of denial of critical care was founded.

On August 24, the State filed a petition to adjudicate L.F. a child in need of assistance. Following a contested adjudication hearing, the juvenile court adjudicated L.F. a child in need of assistance under Iowa Code section 232.2(6)(b) and 232.2(6)(c)(2) (2016). The dispositional order of May 9, 2017, ordered L.F. "remain with her parents while under the protective supervision of the Department of Human Services."

The mother appeals.

## II.    Scope and Standard of Review

We review a juvenile court's adjudication of a child as a child in need of assistance de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). Though we give weight to the juvenile court's findings of fact, we are not bound by them. *Id.* "Our primary concern is the children's best interests." *Id.*

### III.    Statutory Grounds[2]

Iowa Code section 232.2(6)(b) provides:

> 6. "Child in need of assistance" means an unmarried child:
> . . . .
> b. Whose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child.

Iowa Code section 232.2(6)(c)(2) provides:

> 6. "Child in need of assistance" means an unmarried child:
> . . . .
> c. Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
> . . . .
> (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

"Within chapter 232, 'physical abuse or neglect' and 'abuse or neglect' mean 'any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child.'" *J.S.*, 846 N.W.2d at 41 (citation omitted). Our supreme court has defined harmful effects under section 232.2(6)(c)(2) as "established when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 41–42.

The mother argues the State failed to prove by clear and convincing evidence L.F. had suffered or was imminently likely to suffer abuse or neglect or

---

[2] On appeal, the mother also raises constitutional claims in regards to exhibits introduced by the State at the adjudicatory hearing. However, those arguments were not made below and were therefore not ruled on by the juvenile court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

had suffered or was imminently likely to suffer harmful effects as a result of the mother's failure to exercise a reasonable degree of care in supervising L.F.

Based on the record, we agree with the juvenile court the State proved by clear and convincing evidence L.F. was a child in need of assistance. In the child abuse assessment performed by the DHS, the social worker stated:

> The concern with regard to getting the medical care is the caretaker's action (or "acts") of "fabrication, exaggeration, etc." fail to provide adequate health care because it not only places the child "in danger of suffering injury or death" but also may mask . . . other health care needs.

In its adjudication order, the juvenile court concluded:

> The Court finds that the State has proven by clear and convincing evidence that the child is a child in need of assistance pursuant to Iowa Code [section] 232.2(6)(b) and (6)(c)(2). The evidence shows [L.F.] has been seen and treated by multiple medical professionals for vomiting, diarrhea, and perceived food allergies observed primarily by the mother. [The mother] has not followed medical advice on at least one occasion which, thankfully, was not life threatening for [L.F.] but could have been. There is a founded child abuse assessment for denial of critical care, lack of adequate medical care. There are documented concerns from multiple doctors that [L.F] was/is a victim of medical child abuse. The court concludes there is insufficient evidence to support a diagnosis of Fabricated Childhood Illness (also referred to as Munchausen Disorder by Proxy, Pediatric Condition Fabrication by Proxy, and Factitious Disorder), but such a diagnosis has not been completely ruled out. Voluntary services are not sufficient to resolve the safety concerns.

We agree with the juvenile court the facts of this case clearly demonstrate the mother was imminently likely to abuse or neglect L.F. under section 232.2(6)(b) and L.F. was imminently likely to suffer harmful effects as a result of the mother's failure to exercise a reasonable degree of care in supervision under section 232.2(6)(c)(2).

**IV.     Conclusion**

Because we agree with the juvenile court's conclusion the State proved the statutory grounds for adjudicating L.F. a child in need of assistance, we affirm.

**AFFIRMED.**